Filed 1/30/15  In re Alex Y. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ALEX Y., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEX Y.,<br><br>    Defendant and Appellant. | A141551<br><br>(Napa County<br>Super. Ct. No. JV17581) |

Alex Y. appeals from a dispositional order of the juvenile court sustaining allegations of attempted criminal threats and making a false report of an emergency. Alex contends the prosecution failed to prove the attempted criminal threats because there was insufficient evidence he intended his statements to be received by a particular person or group, the recipients identified in the complaint as "persons associated with an elementary school" were too vague and broad, and his statements were insufficiently specific and immediate to be understood as threats. His contentions are meritless, so we affirm.

**BACKGROUND**

On October 20, 2013, a report was made to the American Canyon Police Department that threatening statements were posted on Facebook under Alex's name. Napa County Sheriff's Deputy Kenneth Vandyke responded. The caller, who wished to

1

remain anonymous, e-mailed the posts to Deputy Vandyke. The first said, "Im going to shoot up an elementary school and eat the children's still beating hearts[.]" The second, posted about seven and a half hours later, said "Im gonna shoot up the elementary school tomorrow" (*Sic*.) and "Oh boy I cant wait for the nsa to arrive at my doorstep with a warrent[.]"(*Sic*.)

Deputy Vandyke contacted Alex Y. at his home, told him he was under arrest for criminal threats, and asked if the Facebook posts were his. Alex admitted they were, but said he made them "as a joke. He saw another person was recently arrested for the same thing." He did not seem surprised that the police came to his home. A search of Alex's bedroom produced several Airsoft replica rifles,[1] a helmet, and a tactical vest.

The People filed a juvenile wardship petition alleging two felony counts of attempt to threaten to commit a crime resulting in death or bodily injury and two misdemeanor counts of falsely reporting an emergency. The juvenile court sustained all counts following a contested jurisdictional hearing and denied a defense motion to reduce the felonies to misdemeanors. Alex was placed on six months' probation without wardship and committed to juvenile hall for eight days with credit for eight days served. This timely appeal followed.

## DISCUSSION

Alex's challenge to the sufficiency of the evidence is premised on his contentions that his Facebook posts were insufficiently specific and immediate to constitute a threat, that there was insufficient evidence to prove he intended his posts to be received and understood as threats, and that the prosecution failed to identify the group of intended recipients with sufficient specificity to support a finding that the postings could cause a reasonable person to be placed in fear. We disagree.

---

[1] Airsoft rifles are air guns that fire plastic pellets.

2

## I. Legal Standards

### A. Attempted Criminal Threats

Under Penal Code section 422,[2] "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety" is guilty of a crime punishable as a misdemeanor or a felony. (§422, subd.(a).)

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]'under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228; *People v. Chandler* (2014) 60 Cal.4th 508, 511.)

The crime of *attempted* criminal threat is completed "whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that

---

[2]Further citations to statutes are to the Penal Code.

goes beyond mere preparation and indicates that he or she is putting a plan into action. Furthermore, in view of the elements of the offense of criminal threat, a defendant acts with the specific intent to commit the offense of criminal threat only if he or she specifically intends to threaten to commit a crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety." (*People v. Toledo, supra*, at pp. 230–231.) An attempted criminal threat is thus completed if a defendant does everything necessary to perpetrate a criminal threat but the threat is intercepted before it is delivered. (*Id*. at p. 231.)

## B. Standard of Review

In reviewing the sufficiency of the evidence in a juvenile criminal case, as with an adult conviction, " 'we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.] ' "[O]ur role on appeal is a limited one." [Citation.] Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]' " (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)[3]

---

[3]The Attorney General correctly observes that a somewhat more complex standard of review applies when a defendant in a criminal threats case raises a plausible First Amendment defense. (See *In re George T.* (2004) 33 Cal.4th 620, 631–632.) Although Alex makes no such assertion here, we have independently reviewed the record to the extent necessary to ascertain that his Facebook posts constitute speech that falls outside the protection of the First Amendment. (See *id*. at p. 634 ["independent review permits

## II. Analysis

Alex demurred to the attempted threats counts as originally charged and as proposed in an amended petition because the alleged intended recipient of his posts was "the elementary school," and, as Alex observed, "[a]n elementary school is not a human." The People, perhaps in an excess of caution, amended the petition to identify as the alleged recipient " 'persons associated with an elementary school,' " to clarify that the victim was not an inanimate collection of classrooms, books and desks, but, rather, "every person who goes to, works at, or is related to someone who goes to or works at an elementary school in American Canyon, or anywhere for that matter . . . ." The People explained, "[t]here is not a single named victim because this threat was not communicated to one particular person. It was broadcast on the internet where hundreds, if not thousands, of people may have seen it. Among those people were the minor's friends and neighbors in American Canyon, including people who work at or have family members who work at or attend elementary school in American Canyon. It is all of these people that are potential victims of the minor's threats." The juvenile court granted the motion to amend and overruled the demurrer.

Invoking a related theme on appeal, Alex asserts the evidence was insufficient to sustain the attempted criminal threats allegations because the prosecution failed to identify either specific persons, a particular elementary school, or persons associated with a particular elementary school as the intended recipients of his threats to "shoot up an elementary school and eat the children's still beating hearts" and "shoot up the elementary school tomorrow." We disagree.

Alex is mistaken on the law when he argues the intended victim of *attempted* criminal threat must be a specific, identifiable person or persons. He cites no cases that so hold, and his citation to cases that involve identified or identifiable recipients are not authority for his claim that the intended recipients must be identifiable—or at least more clearly identifiable than "persons associated with an elementary school." (See, e.g.,

an appellate court to ensure that the *Toledo* test is satisfied and that the suppression of speech is constitutionally permissible".])

5

*People v. Toledo*, *supra*, 26 Cal.4th 221 [defendant verbally threatened his wife]; *People v. Chandler*, *supra*, 60 Cal.4th at pp. 511–512 [verbal threat to kill neighbor and former friend]; *In re George T., supra,* 33 Cal.4th 620 [student gave two classmates allegedly threatening poem]; *In re Ricky T.* (2001) 87 Cal.App.4th 1132 [student verbally threatened teacher]; *People v. Wilson* (2010) 186 Cal.App.4th 789 [prisoner threatened guard].)  Judicial opinions are not authority for propositions not considered.  (*People v. McGraw-Hill Companies, Inc.* (2014) 228 Cal.App.4th 1382, 1390.)

In any event, the ascertainable identity of the intended recipient or recipients of a threat is not one of the elements of the attempt offense enumerated in *People v. Toledo, supra*, 26 Cal.4th at pp. 227–228.  (See *In re George T.*, *supra*, 33 Cal.4th at p. 634.)  Nor, in this age of instantaneous widespread electronic communication, would it make sense to conjure a legislative intent to so limit penal liability for attempted criminal threats.  Such a requirement would produce the absurd result that an otherwise plausible threat targeting a large but poorly defined group, such as a threat to detonate a bomb in a major California city, could not be prosecuted as an attempted violation of section 422 even if it was intended, and likely, to cause tens of thousands of persons "reasonably to be in sustained fear for [their] own safety or [their] immediate [families'] safety."  (§ 422, subd. (a).)  "In the end, a court must adopt the construction most consistent with the apparent legislative intent and most likely to promote rather than defeat the legislative purpose and to avoid absurd consequences."  (*In re J.W.* (2002) 29 Cal.4th 200, 213.)

Alex's evidentiary argument is equally unconvincing.  He maintains the prosecution failed to show he intended for anyone at any elementary school to receive his "communications."  But evidence of specific intent " 'is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.] . . . 'We "must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence. [Citation.]" [Citation.]' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)  Here, although Alex concedes he posted the statements on Facebook, he says there was no evidence they were accessible to anyone except his Facebook "friends" and the prosecutor should have, but did not, prove the number or

6

identity of such "friends" who had access to his posts. Moreover, Alex maintains that Facebook is a "poor way" of conveying threats because his Facebook settings may not have included any elementary school children or their parents.

None of this supports his claim. Whether or not any individuals "associated with an elementary school" had direct access to Alex's Facebook posts, his comments about wanting to see if he would get arrested demonstrate knowledge that his threats were likely to spread broadly enough, and be taken sufficiently seriously, to involve law enforcement. Moreover, given the horrific notoriety of school shootings in recent years, Alex must have anticipated that individuals who saw his threats would alert others, including people who worked at, had relatives who attended, or attended elementary schools in the area. Indeed, at least one student (more likely high school than elementary) who accessed his Facebook page notified his or her parent, who reported it to the police. " 'Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.' " (*People v. Manibusan*, *supra*, 58 Cal.4th at p. 87.) The evidence here reasonably supports the inference that Alex intended his threats to cause fright among his targeted audience.

Alex also argues the judgment is unsupported because (1) his threats did not single out a particular elementary school, and (2) the evidence did not show when he posted them. True, but immaterial. " 'A threat is sufficiently specific where it threatens death or great bodily injury. A threat is not insufficient simply because it does "not communicate a time or precise manner of execution, section 422 does not require those details to be expressed. " ' [Citations.]" (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1432.) " '[W]e understand the word "immediate" to mean that degree of seriousness and imminence which is understood by the victim to be attached to the future prospect of the threat being carried out, should the conditions not be met.' " (*Id.*, italics omitted; *People v. Butler* (2000) 85 Cal.App.4th 745, 752) Moreover, as the People observe, the lack of a specifically targeted elementary school made the threat more pervasive, not less, because

7

any parent, student, teacher or staff member at *any* elementary school would reasonably be put in fear of an attack.

Lastly, in his reply brief Alex argues his claim that he would "eat the children's still beating hearts" is so "hyperbolic and impossible" that no reasonable person would take it as an actual threat. But the real world teaches that such figurative speech can betray a malicious intent. The juvenile court quite reasonably found that Alex's threat to "shoot up an elementary school" would, if delivered to persons associated with an elementary schools, convey "a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety." (*People v. Toledo, supra*, 26 Cal.4th at pp. 230–231.) Whether or not the recipient would have believed Alex intended to literally "eat the children's still beating hearts" is horrifying, but immaterial.

## DISPOSITION

The judgment is affirmed.

_____
Siggins, J.

We concur:


_____
McGuiness, P.J.


_____
Jenkins, J.

*In re Alex Y.*, A141551